# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

THE WEBB LAW FIRM, P.L.L.C.,

                              Plaintiff,

v.                                       CIVIL ACTION NO.   2:13-cv-21470

THE WEBB LAW FIRM, P.C.,

                              Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is the motion for judgment on the pleadings and motion to strike improper affirmative defenses [ECF 15] filed by The Webb Law Firm, P.C., the Defendant and counterclaim Plaintiff (referred to at times herein as "Defendant" or "the Pennsylvania law firm").

The Webb Law Firm, P.L.L.C., the Plaintiff and the counterclaim Defendant in this case, (referred to at times as "Plaintiff" or "the West Virginia law firm"), filed its response in opposition (ECF 18) to Defendant's motion.   Defendant filed a reply (ECF 19).   For the reasons set forth in this Opinion, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's motion for judgment on the pleadings; the Court **DENIES** the motion to the extent it seeks judgment on the pleadings; the Court **GRANTS** the motion insofar it asks the Court to strike improper affirmative defenses.

Also pending is Plaintiff's motion for judgment on the pleadings [ECF 28].   On May 20, 2014, however, Plaintiff filed its notice withdrawing this motion (ECF 42).   Accordingly, the Court **DENIES AS MOOT** this motion.

## I.   BACKGROUND

The following facts are alleged by Plaintiff in its Complaint and its exhibits and are assumed, as they must be at this juncture, to be true.

Plaintiff, a limited liability company, is a West Virginia law firm principally located in Charleston, West Virginia.   (ECF 1 at 2.)   The firm was started by a Charleston area lawyer, Charles "Rusty" Webb, in early 2006.   (*Id.* at 4.)   Plaintiff's law practice is limited to the areas of personal injury and family law in southern West Virginia.   (*Id.*)   Prior to the formation of his own firm, Mr. Webb had practiced law in a two-man law firm, Giatras & Webb.   (*Id.* at 3.)

Defendant is a corporate intellectual property law firm located in Pittsburgh, Pennsylvania. (*Id.* at 1.)   Defendant registered the service marks "The Webb Law Firm" and "Webblaw.com" with the United States Patent and Trademark Office in the late 1990s.   (ECF 1–2 at 3, 4.) Defendant maintains that these marks are incontestable under federal trademark law.[1]   (*Id.* at 1.) None of the members of Defendant's law firm bear the surname "Webb".[2]   (ECF 1 at 9.)   None of the Defendant's lawyers are licensed to practice law in West Virginia.   (*Id.*)

---

[1]  Pursuant to 15 U.S.C § 106, with certain exceptions "the right of the owner [of a registered mark] to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable."   Pursuant to 15 U.S.C. § 1115(b), an incontestable, registered mark "shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 1114 of this title." In addition to subjecting the conclusive evidence standard to proof of infringement, the statute also lists numerous defenses to a registrant's conclusive evidence assertion.   15 U.S.C. § 1115(b)(1–9).

[2]  Based on the averment set forth in Defendant's Answer, Defendant's firm is named for a now-deceased lawyer,

This dispute arises from Defendant's claims that Plaintiff's use of "The Webb Law Firm" to market Plaintiff's legal services infringes on Defendant's service mark registrations in violation of various provisions of the Lanham Act, 15 U.S.C. § 1111, *et seq.* and West Virginia state law.

By letter dated July 17, 2013, Defendant's counsel advised Mr. Rusty Webb that Defendant was the owner of trademark registrations "The Webb Law Firm" and "Webblaw.com" for use in the category of "legal services."[3]   (ECF 1–2 at 1.)   The letter indicates that there were previous communications between Defendant and Mr. Rusty Webb concerning Mr. Webb's marketing of his firm's legal services.   (*Id.*)   The letter further advises Mr. Webb that "it has recently come to our attention that you are more prominently featuring the term 'The Webb Law Firm' in your marketing, including on your website . . . and it is our considered opinion that such increased use of 'The Webb Law Firm' infringes our firm's intellectual property interests in and to its trademark registrations identified above in violation of the Lanham Act."   (*Id.*)   Noting that it intended to "achieve a reasonable and amicable resolution," Defendant then requested that Mr. Webb

> cease and desist use of the moniker "The Webb Law Firm," in your marketing material, and instead incorporate some distinguishing language, including, for example, "The Law Offices of Rusty Webb" or "Rusty Webb and Associates." We are willing to afford you a reasonable period of time to transition from such use, so long as a disclaimer is immediately put in place on your website and in your marketing materials, and the like, to indicate that no affiliation exists between your firm and our firm.

---

William Hess Webb, and the Pittsburgh law firm has been in existence since 1845.   (ECF 7 at 9.)   Mr. William Webb apparently practiced law with the Pittsburgh firm for nearly seventy years.   (*Id.*)

[3]  This letter is attached as an exhibit to Plaintiff's Complaint and may, thus, be properly considered by the Court in deciding Defendant's motion for judgment on the pleadings.

(*Id.* at 1–2 .)   In closing, Defendant's counsel requested that Mr. Webb respond within fifteen days or Defendant "will be forced to consider further legal recourse to protect our intellectual property."   (*Id.* at 2.)

Less than three weeks later, on August 5, 2013, Plaintiff filed this lawsuit seeking a declaratory judgment that Plaintiff's use of "The Webb Law Firm, P.L.L.C." does not violate the Lanham Act and does not constitute trademark infringement or unfair competition.   (ECF 1 at 12.)   Plaintiff also seeks a declaration that "The Webb Law Firm, P.L.L.C." is not a reproduction, copy, counterfeit, or colorable imitation of Defendant's mark under the Lanham Act.   *Id.* Plaintiff further requests an injunction restraining Defendant from "further threats and harassment" and attorneys' fees.   *Id.*

Defendant now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).   (ECF 15.)

## II.   LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure succinctly provides:   "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."   *Williams v. Basic Contracting Servs., Inc*., Civil Action No. 5:09-CV-00049, 2009 WL 3756943 (S.D. W. Va. Nov. 9, 2009) (citing *Burbach Broad. Co. v. Elkins Radio Corp*., 278 F.3d 401, 405–06 (4th Cir. 2002.   When considering a motion for judgment on the pleadings under Rule 12(c), the Court applies the same standard as when considering a motion to dismiss pursuant to Rule 12(b)(6).   *Id.* (citing *Burbach*., 278 F.3d at 405–06 (4th Cir. 2002)).   A court must accept all well-pleaded allegations in the plaintiff's complaint as true and draw all reasonable

factual inferences from those facts in the plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires that the factual allegations "be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.*

If evidence outside the pleadings is tendered to and accepted by the Court, the motion for judgment on the pleadings is converted into a motion for summary judgment under Rule 56. *Id.* (citing *A.S. Abell Co. v. Baltimore Typographical Union*, 338 F.2d 190, 193 (4th Cir.1964); Fed. R. Civ. P. 12(d). The motion is not converted into a summary judgment motion if the Court considers documents and facts of which it may take judicial notice. *Id.* (citing *R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178, 182 (1st Cir. 2006); *Armbruster Prods. v. Wilson*, No. 93–2427, 1994 U.S. App. LEXIS 24796, at *5, 1994 WL 489983 (4th Cir. Sept. 12, 1994) (unpublished)). The Court may take judicial notice of certain facts which are not subject to reasonable dispute, Fed. R. Evid. 201, and of the existence and contents of various types of official documents and records. *Id.* (citing *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir.1996)

5

(documents filed with government agencies); *Anderson v. FDIC*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (records of bankruptcy court); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F.Supp.2d 533, 538 n.3 (W.D.N.C. 2008) (EEOC complaints and right-to-sue notices)).   A court may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.   *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Edwards*, 178 F.3d at 243–44 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

### III.   DISCUSSION

Applying these principles to this case, it is plain that, based solely on the matters contained in the Complaint and its exhibits, Defendant's motion lacks merit.[4]   The Court will address each of Defendant's five arguments in support of its motion in turn.

A.   *Assuming the truth of Plaintiffs' allegations, a legal basis for declaratory relief exists, and the Complaint plausibly alleges a claim for declaratory relief*

1.   *Accepting Plaintiff's allegations as true, declaratory relief is available as a matter of law*

Defendant's first challenge is two-fold.   Defendant effectively argues that, even if Plaintiff's allegations were true, declaratory relief is unavailable as a matter of law because there

---

[4]   This is a declaratory judgment action where the Plaintiff has asserted defenses to threatened service mark infringement claims.   In analyzing Defendant's motion for judgment on the pleadings the Court undertakes the unusual and confounding task of assessing the plausibility of *defenses* rather than claims.

6

was no imminent threat of litigation at the time Plaintiff filed its Complaint.   This claim challenges the Court's subject matter jurisdiction.   As such, this challenge is more appropriately considered under Federal Rule of Civil Procedure 12(b)(1).   Defendant also appears to challenge the sufficiency of the factual allegations of the Complaint under federal pleading standards.   This challenge is more appropriately analyzed under Rule 12(b)(6) standards.   The Court will address these separate but related arguments, beginning, as it must, with the subject matter jurisdiction contention.

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).   "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredricksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).   "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists."  *Id.* (citations omitted). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.*

Plaintiff's Complaint seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202. Section 2201(a) provides in pertinent part:

> (a)   In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.   Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201 (2010).   Section 2202 provides:   "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

The Declaratory Judgment Act does not confer jurisdiction upon federal courts.   *Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671 (1950).   Thus, the power to issue declaratory judgments must lie in some independent basis of jurisdiction.   Here, Plaintiff invokes this Court's federal question jurisdiction under 28 U.S.C. § 1331.[5]

In *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366 (4th Cir. 2001), the Fourth Circuit explained:

> [I]n a declaratory judgment action, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff. Thus, if the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff.

*Id.* at 370.   *See also Severe Records, LLC v. Rich*, 658 F.3d 571, 581–81 (6th Cir. 2011) (holding that the district court had subject matter jurisdiction over declaratory judgment action where the claim threatened to be brought by the defendant arose under federal law); *Samuel C. Johnson 1988 Trust v. Bayfield County*, 520 F.3d 822, 828 (7th Cir. 2008) (stating that the issue was whether the declaratory judgment defendant's presumed complaint against the declaratory judgment plaintiff on its face would include an action arising under federal law); *Household Bank v. JFS Group*, 320 F.3d 1249, 1257 (11th Cir. 2003) (holding that federal subject-matter jurisdiction existed in a

---

[5]   Diversity jurisdiction, although not invoked, may be another possible avenue for jurisdiction based on the parties' diverse citizenship and principal place of businesses and the assumption that the amount in controversy is in excess of $75,000.

declaratory judgment action in which a defendant could have brought a federal or state claim in a coercive action); *TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999) (acknowledging that a declaratory judgment plaintiff does not have to show that it could state a federal claim independent of the declaratory judgment statute, but rather may show that would be federal jurisdiction over a claim made against the plaintiff); *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) ("A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there"); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) ("[F]ederal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law); *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 194 (2d Cir. 1987) ("A] court must look beyond the declaratory judgment allegations and determine whether a substantial federal question arises either from the defendant's threatened action, or from the complaint when viewed as a request for coercive relief apart from the defendant's anticipated suit") (citations omitted)).

The parties appear to be in agreement that Defendant could have originally filed suit in a federal court alleging violations under the Lanham Act.   In fact, after Plaintiff filed its declaratory judgment Complaint, Defendant filed five counterclaims, four of which arise under the Lanham Act.   (ECF 7 at 19–27.)   Plaintiff has not challenged the plausibility of these asserted claims. Accordingly, the Court is satisfied that it has subject matter jurisdiction over this case insofar as it is based on claims arising under federal law that Defendant could have independently filed (and that Defendant has actually since filed in this case as counterclaims).

Defendant also appears to argue that, assuming the facts alleged by Plaintiff are true, there was no imminent threat of litigation at the time Plaintiff filed its Complaint as a matter of law and, thus, dismissal of the Complaint is appropriate on this basis alone.

This specific challenge raises a ripeness question.   In declaratory judgment actions, the dispute before the court must be " 'definite and concrete, touching the legal relations of parties having adverse legal interests'"   *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).   The dispute must be "'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.*   "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."   *Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941).

To determine whether a case or controversy exists in a declaratory judgment action involving a trademark dispute, courts apply a two-pronged test.   *Indium Corp. of America v. Semi–Alloys, Inc*., 781 F.2d 879, 883 (Fed. Cir. 1985).   First, the declaratory plaintiff must have a real and reasonable apprehension of litigation.   Second, the declaratory plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant.   *Windsurfing International Inc. v. AMF Inc.*, 828 F.2d 755, 757 (Fed. Cir. 1987) (citations omitted).   The controversy must have existed at the time the pleading was filed. *Id*.

Rather incredibly, Defendant argues that Plaintiff has not established "that any imminent threat of litigation existed at the time that the Complaint was filed."   (ECF 16 at 5.)   Defendant

characterizes its correspondence as only seeking an "amicable resolution". (*Id.*) Defendant denies that its cease-and-desist-letter threatened litigation.

The Court is usually not pressed by litigants' arguments to resort to dictionary definitions of commonly understood words. Defendant's argument necessitates this exercise. "Threaten" means "to utter threats against: promise punishment, reprisal, or other distress to", "to charge under pain of punishment: warn", "to promise as a threat: hold out by way of menace or warning", "to give signs of the approach of (something evil or unpleasant)"; "indicate as impending: portend"; "to hand over as a threat: menace"; "to announce as intended or possible". Webster's Third New International Dictionary 2382 (unabridged). A cease-and-desist letter is

> A cautionary notice sent to an alleged wrongdoer, describing the offensive activity and the complainant's remedies and demanding that the activity stop. A cease-and-desist-letter is commonly used to stop or block the suspected or actual infringement of an intellectual-property right before litigation. Ignoring a cease-and-desist letter may be used as evidence that the infringement was willful.

Black's Law Dictionary 252 (Ninth Ed.)

The Court has little difficulty finding that Defendant's artfully worded cease-and-desist letter threatened that Defendant would sue Plaintiff unless Plaintiff ceased using the name "The Webb Law Firm". In its July 17, 2013, correspondence to Rusty Webb, Defendant explicitly advised Mr. Webb that he was infringing on Defendant's trademark registration of the name "The Webb Law Firm" and that such use was "in violation of the Lanham Act." (ECF 1–2 at 1.) The letter references prior communications between Defendant and Mr. Webb concerning this controversy. These prior communications evidence watchful territorial patrolling by Defendant of Mr. Webb's use of the Webb Law Firm name over some period of time. Although Defendant stated that it was its intention to "achieve a reasonable and amicable resolution . . . without the

need to resort to formal legal proceedings", any such resolution, in Defendant's view, required complete capitulation by Plaintiff and to "cease and desist" its use of the name "The Webb Law Firm." (*Id.*) Defendant asserts that it would give Mr. Webb "a reasonable period of time to transition." (*Id.* at 2.) But Defendant closes by asking that Mr. Webb respond to the letter within fifteen days or Defendant "will be forced to consider further legal recourse to protect our intellectual property." (*Id.*) In light of these "or else" types of assertions, it is plain under these circumstances that Plaintiff was faced with a present and a real danger that it would be sued under the Lanham Act unless it ceased using the name "The Webb Law Firm" and that the challenge to its position was actual and genuine and not merely possible or remote.

Accordingly, the Court finds that Plaintiff's Complaint alleges circumstances that show that Mr. Rusty Webb had a real and reasonable apprehension of litigation upon his receipt of Defendant's cease-and-desist letter and that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The Court further finds that Plaintiff engaged in a course of conduct which brought it into adversarial conflict with Defendant.

> 2. *Plaintiff's Complaint and its exhibits plausibly show claims for declaratory judgment relief*

The Court also rejects Defendant's claim that the Complaint lacks factual support for Plaintiff's assertions that its use of the name "The Webb Law Firm" is not likely to cause confusion and is a not counterfeit usage. Defendant claims that Plaintiff offers only conclusory paragraphs in Counts I and II of its Complaint that the use of "The Webb Law Firm" is not likely to cause confusion or mistake and is not a counterfeit usage. (ECF 16 at 6.)

The fallacy of this assertion is demonstrated by reference to other allegations in the Complaint, which the Court, at least at this juncture, must assume true.   For example, Plaintiff alleges that: his law firm is limited to the practice areas of personal injury and family law and does not offer any intellectual property legal services; his practice is geographically limited to southern West Virginia; Defendant's firm is based in Pittsburgh, Pennsylvania and exclusively practices intellectual property law; Mr. Rusty Webb is a native West Virginian and has practiced law in southern West Virginia for twenty-six years; Mr. Webb adopted "The Webb Law Firm, P.L.L.C." as the official name of his law firm in February 2006; Mr. Webb's law firm has a distinctive logo that incorporates his family crest; Plaintiff's law firm's marketing is not extensive and consists of two websites, "crwlaw.com" and   "rustywebb.com", a billboard, and a local television contract, all of which market exclusively for personal injury and family law in southern West Virginia; all of the lawyers in Mr. Webb's firm bear the surname "Webb" whereas no living member of Defendant's firm have this last name; that the factual basis for Defendant's cease-and-desist demands arise from a single telephone call from an individual mistaking one of the parties' law firms for the other; and Plaintiff has complied with Defendant's request that Plaintiff place a disclaimer on his rustywebb.com website.   (ECF 1 at 1–10.)

These detailed allegations are not conclusory, but rather are assertions of fact that mount a case that Plaintiff's use of "The Webb Law Firm" is not being used by Plaintiff in a manner likely to confuse consumers, an element of proof in infringement and false designation claims. *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (stating that claims under 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A) require the trademark holder to prove: (1) that it possesses a mark; (2) that the opposing party used the mark; (3) that the opposing party's use of the mark occurred in

13

commerce; (4) that the opposing party used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the opposing party used the mark in a manner likely to confuse consumers.)   Accordingly, Defendant's argument that Plaintiff did not provide a factual basis to meet federal pleading standards is meritless.

       B.     *Plaintiff has not conceded liability on any of Defendant's counterclaims*

Defendant argues that Plaintiff has admitted all facts necessary to a finding of liability for the counterclaims asserted by Defendant.   The Court disagrees.

Defendant has alleged five counterclaims against Plaintiff: (1) service mark infringement in violation of 15 U.S.C. § 1114; (2) service mark counterfeiting in violation of 15 U.S.C. § 1114; (3) false designation of origin in violation of 15 U.S.C. § 1125(a); (4) service mark dilution in violation of 15 U.S.C. § 1125(a); and (5) common law service mark infringement.   (ECF 7 at 19–28.)

Trademark infringement and false designation of origin claims share the same elements of proof.   *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005).   To prevail under either cause of action, the trademark holder must prove:

> (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.

*Id.*

The Fourth Circuit has identified nine factors to guide a court's likelihood of confusion analysis: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or

14

services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the

similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion;

(8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (citations

omitted).   Not all of these factors are of equal importance, nor are they always relevant in any

given case.   *Id.* (citations omitted).   Evidence of actual confusion is often paramount in the

likelihood of confusion analysis.   *Id.* (citations omitted).

Defendant correctly states that Plaintiff admits it has used "The Webb Law Firm", and that

Plaintiff also admits that it has used the mark in connection with its legal services.   It is also true

that Plaintiff alleges in its Complaint that, upon information and belief, Defendant's demands are

based on "one errant phone call from Beckley, West Virginia."   (ECF 1 at 10.)   These assertions

do not, however, amount to a concession of liability by Plaintiff on any of Defendant's

counterclaims.   The core dispute in this case is whether Plaintiff's use of "The Webb Law Firm"

to market its legal services constitutes use of the mark in a manner likely to confuse consumers.

Plaintiff has plainly not conceded this important fact.

Defendant places undue importance on the apparently uncontested fact that there is

evidence that one consumer was actually confused about the legal services offered by the parties.

Such evidence, however, cuts both ways.   On the one hand, it is evidence of actual confusion.

On the other hand, a sole instance of confusion of a single consumer could be said to be persuasive

evidence of the lack of any meaningful confusion by the general public.   As a general matter,

isolated and negligible instances of actual confusion are generally insufficient to support a finding

of actual confusion.   *Duluth News-Tribune, a Div. of Nw. Publ'ns, Inc. v. Mesabi Pub. Co.*, 84

F.3d 1093, 1098-99 (8th Cir. 1996) ("Although this [one] incident provides some support for plaintiff's claim of likelihood of confusion, even several isolated incidents of actual confusion that occur initially upon the creation of a potentially confusing mark are insufficient to establish a genuine issue of material fact as to the likelihood of confusion.") (citing *Astra Pharmaceutical Prod. Inc. v. Beckman Instruments Inc.*, 718 F.2d 1201, 1207–08 (1st Cir. 1983) (holding that temporary confusion regarding the association of salesmen from the plaintiff's company with the defendant was insufficient to raise a genuine issue of material fact); *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3rd Cir. 1978) (holding that nineteen misdirected letters in four years were insufficient to establish likelihood of confusion).   In any event, it is not the Court's role in resolving a motion for judgment on the pleadings to resolve this factual contest. Rather, the Court's job at this juncture is to evaluate the sufficiency of the Complaint's allegations. Inclusion in the Complaint of an allegation that one consumer was actually confused about the parties' law firms does not undermine the legal sufficiency of the Complaint.

For all these reasons, the Court rejects Defendant's contention that Plaintiff has admitted all elements of Defendant's claims.

C.      *Defendant is not entitled to judgment on the pleadings for its dilution claim*

Defendant argues that Plaintiff has conceded that the mark "The Webb Law Firm" is famous, and that it is undisputed that Defendant owns a registered and uncontestable trademark to "The Webb Law Firm", and that there is evidence of actual confusion by the public.   Because of this, Defendant contends that it is entitled to judgment on the pleadings with respect to its service mark claim alleged in Counterclaim IV.   The Court disagrees.

16

Section 1125(a) of Title 15 of the United States Code provides in pertinent part:

(1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Section 1125(c)(1) states:

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

To state a prima facie dilution claim under Section 1125, the plaintiff must show the following: (1) that the plaintiff owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 168 (4th Cir. 2012) (citing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog*, LLC, 507 F.3d

17

252, 264–65 (4th Cir. 2007)).   As defined by 15 U.S.C. § 1125(c)(2)(A), a mark is "famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."   "Dilution by blurring" is the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark."   15 U.S.C. § 1125(c)(2)(B).

Defendant correctly states that in its Complaint Plaintiff alleges that the mark "The Webb Law Firm" and Plaintiff's website "rustywebb.com" are "famous marks and logos."   (ECF 1 at 7.) The Court disagrees, however, with Defendant's construction that Plaintiff is thereby admitting that Defendant's registered trademark, "The Webb Law Firm", is a famous mark, as that term is defined under 15 U.S.C. § 1125(c)(2)(A).   Defendant's characterization of Plaintiff's allegation takes the allegation out of context and, as indicated by Plaintiff's response to Defendant's motion, is not intended to be a concession of the fame of Defendant's mark.   In any event, this is an issue better left to a fair contest on the merits.

###### D.    *Defendant is not entitled to judgment on the pleadings on its counterfeit claim*

Defendant contends that it is uncontested that Plaintiff has been willfully infringing on Defendant's trademark since at least July 17, 2013, the date of Defendant's cease-and-desist letter to Rusty Webb.   Thus, Defendant claims it is entitled to judgment on the pleadings with respect to the counterfeit claim asserted in Counterclaim II.   Once again, and for many of the same reasons stated above, Defendant's contention is unavailing.

Counterclaim II alleges service mark counterfeiting in violation of 15 U.S.C. §§ 1114, 1117, and 1118.   Section 1114(a) provides in pertinent part:

18

(1) Any person who shall, without the consent of the registrant—

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.   Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (2012).  Under 15 U.S.C. § 1114(1), the test for trademark infringement is whether there is a likelihood of confusion of the counterfeit with the genuine goods.  *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

Thus, once again, the fact that "The Webb Law Firm" is a registered and uncontestable service mark owned by Defendant and the fact that Plaintiff uses "The Webb Law Firm" to market its legal services do not, on their own, make Plaintiff liable under the Lanham Act.  Rather, as with the infringement, false designation, and dilution claims, the core inquiry is whether Plaintiff's use of "The Webb Law Firm" to market its legal services constitutes use of the mark in a manner likely to confuse consumers.   Where Plaintiff's Complaint plausibly asserts facts to show that its

19

use of "The Webb Law Firm" is not likely to confuse consumers, Defendant is not entitled to judgment on the pleadings on the counterfeit claim.

      E.    *Contrary to Defendant's assertions, Rusty Webb's surname is a relevant consideration in the likelihood of confusion inquiry*

Finally, Defendant contends that Rusty Webb's surname is "irrelevant" to the Court's analysis. Defendant argues that because Defendant's registration of "The Webb Law Firm" has been afforded "incontestable" status, this status forecloses any challenge that "The Webb Law Firm" is merely a descriptive mark and undeserving of protection. In support of that contention, Defendant cites *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189 (1985).

Although its argument is not the model of clarity, it appears Defendant confuses the issue of the validity of its incontestable service mark with the separate question of whether a court in an infringement suit may consider the descriptive nature of the incontestable mark when determining whether registrant has proved that a likelihood of consumer confusion exists.

Defendant is correct that the incontestable status of its service mark means that Plaintiff cannot claim that the mark is merely descriptive and, therefore, invalid and undeserving of any protection. Indeed, a trademark's incontestability provides a strong presumption in favor of the mark's protectibility and validity. *See* 15 U.S.C. § 1115(b); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 935 (4th Cir. 1995). Although not dispositive as to likelihood of confusion, a mark's incontestable status entitles the mark to substantial protection. *Id.* (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 799 F.2d 867, 871 (2d Cir. 1986). The incontestable status also is conclusive evidence of Defendant's right to use the mark in commerce as established in 15 U.S.C. § 1115(b).

20

Defendant, however, is incorrect in asserting that Rusty Webb's surname is "irrelevant" to the Court's evaluation in this infringement action of whether Plaintiff's use of "The Webb Law Firm" was likely to cause confusion.   Stated differently, incontestability alone does not prove that a likelihood of confusion exists between two marks.   This is true because a registrant of an incontestable mark in an infringement action must still establish that confusion is likely.   As noted above, one of the factors a court considers in its likelihood of confusion analysis is the strength of the mark.   *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). The strength of a mark is the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source.   *CareFirst of Maryland, Inc. v. First Care, P.C*., 434 F.3d 263, 269 (4th Cir. 2006).   Thus, if the registered mark is weak, the purchasing public will not be likely to be confused by the use of a similar mark used in connection with other goods or services.   A failure in proof that there was a likelihood of confusion by Plaintiff's use of Defendant's mark would mean that Plaintiff is not liable on Defendant's infringement claims.

The Fourth Circuit explored these principles in *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997).   There, the defendant-registrant (Petro Stopping) argued that the district court erred in finding that, because the "PETRO" mark was descriptive and weak, there was no likelihood of confusion.   Petro Stopping argued that because eight of its PETRO marks were incontestable, the district court was legally precluded from reaching its conclusion.   *Id.*   Petro Stopping, like the Defendant here, cited *Park 'N Fly, Inc.* in support of its position.

21

The Fourth Circuit soundly rejected Petro Stopping's argument.   The court stated:

> Petro Stopping misapprehends the *Park 'N Fly* holding and confuses the issue of a
> trademark's validity with the separate inquiry into a mark's strength for purposes of
> the likelihood of confusion determination.   In *Park 'N Fly*, the Supreme Court
> held that a defendant in an infringement suit cannot claim that an incontestable
> mark is merely descriptive and therefore invalid and undeserving of any protection.
> The Court did not hold, however, that the descriptive nature of a mark may not be
> considered in the separate likelihood of confusion inquiry.   This characterization
> of the Court's holding is confirmed by the Trademark Law Revision Act of 1988,
> which amended one of the Lanham Act's incontestability provisions to clarify that
> "[s]uch conclusive evidence of the right to use the registered mark shall be subject
> to proof of infringement."   Pub. L. No. 100–667, § 128(b)(1), 102 Stat. 3935, 3945
> (codified at 15 U.S.C. § 1115(b)) (emphasis added).

130 F.3d at 92.   The Fourth Circuit then noted other circuit precedent in accord with this rule.

130 F.3d at 91 (citing *Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 930 (stating that

incontestability affects the validity of the trademark but does not establish the likelihood of

confusion necessary to warrant protection from infringement; likelihood of consumer confusion

remains an independent requirement for trademark infringement; courts are free to address

whether an incontestable trademark is descriptive or suggestive in determining whether the

likelihood of consumer confusion exists in this case) and *Shakespeare Co. v. Silstar Corp. of

America, Inc*., 110 F.3d 234, 238–40 (4th Cir. 1997) (stating that although a district court cannot

cancel an incontestable trademark on grounds of functionality or descriptiveness, it can and should

consider those grounds when determining whether likelihood of confusion has been established)).

As with the registrant-defendant in *Petro Stopping Centers, L.P.,* Defendant's argument

that the incontestable status of its service mark means that Rusty Webb's surname is "irrelevant" to

the issues before the Court is erroneous.   The Court thus rejects as baseless Defendant's request

for judgment on the pleadings under this theory.

22

*IV. DEFENDANT'S MOTION TO STRIKE AFFIRMATIVE DEFENSES*

Defendant moves to strike certain affirmative defenses asserted in Plaintiff's answer (ECF 12) to Defendant's counterclaims.  (ECF 16 at 15–17.)  Defendant argues that the asserted defenses "incorporate concepts of negligence" and these defenses are irrelevant because the claims asserted impose strict liability.

Plaintiff does not oppose the motion.  Accordingly, the Court **STRIKES** affirmative defenses 6–8, 10–12, and 15–18 from Plaintiff's answer to Defendant's counterclaims.

*V.     CONCLUSION*

For the reasons set forth above, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's motion for judgment on the pleadings and motion to strike [ECF 15]; the Court **DENIES** the motion to the extent it seeks judgment on the pleadings; the Court **GRANTS** the motion insofar it asks the Court to strike improper affirmative defenses.   The Court **DENIES AS MOOT** Plaintiff's motion for judgment on the pleadings [ECF 28].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 25, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE